**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| UNITED BANK | ) | Case No.  2:24-cv-3 |
| 11185 Fairfax Boulevard | ) | |
| Fairfax, VA 22023 | ) | Judge  Kleeh |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **VERIFIED COMPLAINT FOR** |
| v. | ) | **BREACH OF CONTRACT AND** |
| | ) | **EMERGENCY APPOINTMENT OF A** |
| | ) | **RECEIVER** |
| ALLEGHENY WOOD PRODUCTS, INC. | ) | |
| 240 Airport Road | ) | |
| Petersburg, WV 26847 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALLEGHENY WOOD PRODUCTS | ) | |
| INTERNATIONAL, INC. | ) | |
| 240 Airport Road | ) | |
| Petersburg, WV 26847 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ALLEGHENY WOOD TIMBER | ) | |
| PRODUCTS, LLC | ) | |
| 240 Airport Road | ) | |
| Petersburg, WV 26847 | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

ELECTRONICALLY
FILED
3/04/2024
U.S. DISTRICT COURT
Northern District of WV

1

## VERIFIED COMPLAINT

For its complaint against defendants, ALLEGHENY WOOD PRODUCTS, INC., a West Virginia corporation ("AWP"), ALLEGHENY WOOD PRODUCTS INTERNATIONAL, INC., a West Virginia corporation ("AWPI"), and ALLEGHENY WOOD TIMBER PRODUCTS, LLC, a West Virginia limited liability company ("AWTP") (collectively "Defendants"), UNITED BANK, a Virginia banking institution, successor by merger to United Bank, Inc. ("United"), alleges and avers as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      United is a Virginia banking institution, successor by merger to United Bank, Inc., with its principal place of business located at 11185 Fairfax Boulevard, Fairfax, Virginia 22023.

2.      AWP is a West Virginia corporation with its principal place of business at 214 Airport Road, Petersburg, West Virginia 26847.

3.      AWPI is a West Virginia corporation with its principal place of business at 214 Airport Road, Peterburg, West Virginia 26847.

4.      AWTP is a West Virginia limited liability company with its principal place of business at 214 Airport Road, Petersburg, West Virginia 26847.

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between United and the Defendants and the amount in controversy exceeds $75,000.00.

6.      The Court has the authority to appoint a receiver pursuant to 28 U.S.C. § 754 and West Virginia Code § 53-6-1.

7.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

4876-7345-7322.v3

## THE LOAN DOCUMENTS

8.      By Loan Agreement dated September 28, 2005, as amended and modified from time to time (the "Credit Line Loan Agreement"), United made a loan to AWP (the "Credit Line Loan"), and to evidence the Credit Line Loan, AWP executed a Promissory Note dated September 28, 2005, as amended and modified from time to time, payable to United in the original amount of Forty Million Dollars ($40,000,000.00), which amount has increased and decreased from time to time (the "Credit Line Note").

9.      By Loan Agreement dated March 11, 2022, as modified and amended from time to time (the "Term Loan Agreement"), $15,000,000.00 of the Credit Line Loan was designated as a term loan (the "Term Loan"), and $25,475,000.00 of the Credit Line Loan continued as a line of credit under the Credit Line Loan Agreement, so that the principal balance of the Term Loan and the Line of Credit Loan totaled $40,475,000.00. To evidence the Term Loan, AWP executed a Promissory Note, dated March 11, 2022, payable to United in the original amount of Fifteen Million Dollars ($15,000,000.00) (the "Term Note," and collectively with the Credit Line Note, the "Notes").  A true and exact copy of the Notes is set forth in Exhibit A to the Appendix filed contemporaneously with this Verified Complaint.

10.     By Guaranty and Suretyship Agreement effective as of December 1, 2019, John Crites (hereinafter "Guarantor") guaranteed the obligations under the Loan Documents (the "Guaranty").[1] A true and exact copy of the Guaranty is set forth in Exhibit B to the Appendix filed contemporaneously with this Verified Complaint.

---

[1] At this time, United is not pursuing Guarantor for a breach of the Guaranty, but it reserves all rights to pursue such claims at a later date.

11.     By Amendment to Loan Agreements, effective July 31, 2023, as modified and amended from time to time, United and Defendants agreed to extend the maturity date of the Notes to September 30, 2023 (the "July 31, 2023 Amendment"). A true and exact copy of the July 31, 2023 Amendment is set forth in Exhibit C to the Appendix filed contemporaneously with this Verified Complaint.

12.     United and Defendants entered into a Second Amendment to Loan Agreements and an Acknowledgement and Release effective September 30, 2023, executed on December 29, 2023, wherein United and Defendants agreed to extend the maturity date of the Notes to January 31, 2024 (collectively, the "September 30, 2023 Amendment"). A true and exact copy of the September 30, 2023 Amendment is set forth in Exhibit D to the Appendix filed contemporaneously with the Verified Complaint.

13.     To secure repayment of the Notes, one or more Defendants executed and delivered deeds of trust granting liens and security interests on certain real property (the "Real Property Collateral") and personal property as more particularly described in Schedule 1 attached hereto and incorporated herein by reference (the "Deeds of Trust"). True and exact copies of the Deeds of Trust are set forth as Exhibit E to the Appendix filed contemporaneously with this Verified Complaint.

14.     To secure repayment of the Notes, one or more Defendants executed and delivered security agreements granting liens and security interests in substantially all personal property as more particularly described in Schedule 2 attached hereto and incorporated herein by reference (the "Security Agreements"), including, but not limited to, accounts receivable, equipment, and inventory (which includes all lumber and log inventory). True and exact copies of the Security

4

Agreements are attached as Exhibit F to the Appendix filed contemporaneously with this Verified Complaint.

15.     To secure repayment of the Notes, AWP executed and delivered a Pledge Agreement granting a lien and security interest in AWP's membership interest in AWTP (the "Pledge Agreement"). A true and exact copy of the Pledge Agreement is set forth in Exhibit G to the Appendix filed contemporaneously with this Verified Complaint.

16.     The parties entered into a Forbearance Agreement effective February 23, 2024 (the "Forbearance Agreement"), wherein Defendants acknowledge that the Loans have matured and are in default, and consent to the appointment of a receiver, and United agreed to temporarily forbear from exercising its remedies other than seeking the relief requested herein. A true and exact copy of the Forbearance Agreement is set forth in Exhibit H to the Appendix filed contemporaneously with this Verified Complaint.

17.     The liens and security interests in the personal property of Defendants were perfected by the filing of UCC-1 financing statements naming United as Secured Party, as set forth in Schedule 3 attached hereto and incorporated herein by reference (the "UCCs"), and constitute first priority security interests[2] on the Collateral, as that term is defined below. True and exact copies of the UCCs are set forth as Exhibit I to the Appendix filed contemporaneously with this Verified Complaint. The UCCs, together with the Notes, the Deeds of Trust, the Security Agreements, the Pledge Agreement, the July 31, 2023 Amendment, the September 30, 2023 Amendment, and the Forbearance Agreement are referred to herein collectively as the "Loan Documents." The Real Property Collateral and personal property subject to the liens and security

---

[2] United acknowledges that certain creditors might have first priority purchase money interests in certain items of the Collateral, but, other than those purchase money liens, United has a first priority lien on the Collateral.

interests granted pursuant to the aforesaid Deeds of Trust and Security Agreements are hereinafter collectively referred to as the "Collateral."

18.     Pursuant to the terms of the Loan Documents, United has the absolute contractual right to have a receiver appointed, and Defendants have consented to the appointment of a receiver in several different Loan Documents, including most recently in the Forbearance Agreement. Schedule 1 attached hereto references the applicable provisions of the Loan Documents authorizing the appointment of a receiver.

## CURRENT STATUS

19.     In the July 31, 2023 Amendment, the September 30, 2023 Amendment, and the Forbearance Agreement, Defendants acknowledged that they were in default under the Loan Documents.  Defendants further acknowledged the amounts due under the Loan Documents.

20.     Moreover, since the inception of the Credit Line Loan Agreement, the maturity date of the Credit Line note has been extended numerous times.

21.     Beginning in mid to late 2023, the Defendants engaged in a months long marketing and sales process in an attempt to sell their businesses as a going concern.

22.     The July 31, 2023 Amendment and the September 30, 2023 Amendment were further short term extensions granted by United to the Defendants and were made in order to give the Defendants time to undergo the marketing and sales process.

23.     The Notes matured on January 31, 2024, and United demanded payment of the Notes in full.

24.     On February 20, 2024, United was notified by Defendants that the final potential going concern buyer had confirmed that it was no longer interested in purchasing Defendants' business operations.

25.     The final potential going concern buyer had made an offer to acquire the Defendants' entire business operation as a going concern.  While the purchase price is confidential, the amount of the offer, which was rescinded before further negotiations could take place, would not have satisfied United's debt in full.

26.     During the 4-month period ending January 31, 2024, Defendants' accounts receivable, lumber inventory, and log inventory declined by approximately $5.6 million, while Defendants incurred operating losses of approximately $6.0 million.

27.     As of February 20, 2024, Defendants had no prospects for a sale of their business enterprise as a going concern after a six-month sales process by an investment banker.

28.     On February 21, 2024, United exercised its rights under the Loan Documents and placed an administrative freeze on all of the Defendants' deposit accounts that were held at United.

29.     On February 22, 2024, the Defendants ceased operations and terminated most of their employees.

30.     The parties entered into the Forbearance Agreement in an attempt to reach a consensual agreement to allow the Defendants to pay certain necessary expenses required in the winding down of its business operations until a receiver could be put in place to take over control of the wind down process.

31.     The Collateral is located in multiple counties throughout West Virginia, as well as in Clarion County, Pennsylvania and Garrett County, Maryland. The locations of the Collateral are set forth in Schedule 1 to this Verified Complaint.

32.     United has some appraisals of the Real Property Collateral, but those appraisals are for the highest and best use of the Real Property Collateral, and not for shuttered, vacant sawmills.

33.     United does not have any appraisals of the personal property.

34.     After the Defendants ceased operations on February 22, 2024, upon and information belief, their inventory and equipment are sitting idle, and United has been unable to ascertain whether Defendants' property is being adequately secured and protected from any potential damage, destruction, and theft.

35.     The Defendants' assets are mainly located at sawmills or on timberlands which are in rural or remote areas of West Virginia, Pennsylvania, and Maryland.

36.     To date, United is unaware if security personnel has been hired to protect Defendants' sawmill operations.

## COUNT I - BREACH OF LOAN DOCUMENTS

37.     United incorporates by reference herein all of the foregoing allegations.

38.     The Notes matured on January 31, 2024, and, as of February 26, 2024, the amount of principal, interest and late fees only due and owing are $26,541,664.70 on the Credit Line Note and $13,981,872.14 on the Term Note. Defendants have not paid the full outstanding balance of the Notes as of the maturity date as required by the Loan Documents.

39.     Defendants' failure to pay the balances due upon maturity of the Notes constitutes a default under the Loan Documents.

40.     United is entitled to a judgment against Defendants for all amounts due and payable under the Notes, including, but not limited to, the amounts of the balances set forth hereinabove; all interest and late charges accrued and unpaid after February 26, 2024; all attorney's fees and costs of collection; and any and all other expenses and costs associated with Defendants' breach of the Loan Documents.

## COUNT II - UNITED'S UNQUALIFIED RIGHT
## TO APPOINTMENT OF A RECEIVER

41.     United incorporates by reference herein all of the foregoing allegations.

4876-7345-7322.v3

42.     Upon the occurrence of an event of default under the Loan Documents, United possesses an unqualified right to the appointment of a receiver. Reference is hereby made to Schedule 1 of this Verified Complaint.

43.     The appointment of a receiver is not an extraordinary remedy, and United has an absolute right to such relief under the Loan Documents *U.S. Bank Nat. Ass'n v. Sayona Hosp., LLC*, No. 3:14-CV-62-GMG, 2014 WL 2018549 at *3 (N.D. W. Va. June 25, 2014), *report and recommendation adopted*, No. 3:14-CV-62, 2014 WL 2918547 (N.D. W. Va. June 26, 2014). Because an event of default has occurred under the Loan Documents, United is entitled to a receiver as a matter of law.

44.     In addition to United's contractual right to the appointment of a receiver, United has a right in equity to appointment of a receiver to ensure that United's interests are protected. *See, e.g.*, *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S. Ct. 229 (1940); *see also First United Bank & Trust v. Square at Falling Run, LLC,* No. CIV.A. 1:11CV31, 2011 WL 1563108 at *8 (N.D. W. Va. March 31, 2011).  For these reasons, United seeks the appointment of a receiver to (a) assume full operation, management, and control of Defendants' assets and operations; and (b) oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of Defendants and their operations.

45.     A receiver will perform duties necessary to manage, maintain, and protect Defendants' assets.  In particular, a receiver may be empowered to utilize the proceeds from the Collateral and other assets to satisfy related expenses including the secured debt owed by Defendants to United, insurance, taxes, and general costs. Additionally, to the extent funds are insufficient to satisfy essential costs, a receiver may be able to secure funding from sources unavailable to the Defendants.  A receiver may also be able to sell portions of the Defendants'

9

operations to interested third parties, which in turn may be the only way to provide an opportunity for some of the Defendants' workforce to return to employment.

46.    Here, the immediate appointment of a receiver is appropriate for several reasons. First, a receiver is necessary to maintain and, protect the Collateral and the other assets of the Defendants. The accounts receivable and log and lumber inventory are particularly vulnerable to loss or rapid diminution in value. Moreover, the Defendants' assets are not located in one easily secured location but are scattered across multiple locations in three states. Second, a receiver will offer substantial assistance in preparing the Collateral and other assets for sale and in maximizing the sales proceeds for the benefit of United and all other constituents. Third, a receiver is necessary to offer stability and assurances for the orderly wind down and liquidation of the Defendants' business.

47.    Furthermore, the immediate appointment of a receiver is appropriate because Defendants are unable to maintain and to secure the Collateral and their other assets adequately. Without a receiver in place immediately, Defendants risk substantial loss to the Collateral and injury to the value of the United's liens and security interests therein, all without recourse because the Defendants are insolvent.

48.    Immediate appointment of a receiver is warranted at law and in equity, pursuant to both Federal Rule of Civil Procedure 66 and relevant case law, as well as pursuant to United's rights under the Deeds of Trust and other Loan Documents.  The immediate appointment of a receiver protects the value of the Collateral and other assets of Defendants, and it ensures that any funds received through Defendants' business operations are applied appropriately.

49.    For the Court's consideration, United has identified Chris Deweese, a CPA employed by Suttle & Stalnaker, PLLC as an appropriate candidate to serve as the receiver.

Information on Mr. Deweese, including his capabilities as a receiver, is attached hereto as Exhibit J to the Appendix filed contemporaneously with this Verified Complaint.

50.     Defendants expressly consent to the appointment of a receiver to assume full operation, management, and control of Defendants' assets and operations, and to oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of the Defendants. The Defendants' consent is set forth in accordance with the Consent Order Appointing a Receiver, filed simultaneously herewith, which is submitted to the Court as a proposed consent order.

WHEREFORE, United requests this Court grant the following relief:

(a)     A money judgment against Defendants in the amount equal to the principal and interest due and owing under the Loan Documents as of the date judgment is entered, plus pre-judgment and post-judgment interest thereon at the contractual or statutory rates until paid, reasonable attorneys' fees, and all other monetary relief to which it may be entitled under the Loan Documents;

(b)     The immediate appointment of a receiver with the authority to:

     a.   Take control of the properties, assets, and operations of the Defendants;

     b.   Operate, manage, control and sell the Defendants' properties, assets and operations; and

     c.   Oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of the Defendants.

(c)     Such other and further relief as this Court may deem appropriate.

UNITED BANK

By Counsel

**/s/ Seth P. Hayes**
Seth P. Hayes, Esq. (WVSB #10381)
Jackson Kelly PLLC
3000 Swiss Pine Way, Suite 200
Morgantown, West Virginia 26501
Telephone: 304-284-4100
shayes@jacksonkelly.com

and

Ellen S. Cappellanti, Esq. (WVSB #627)
Jackson Kelly PLLC
500 Lee Street, Suite 1600
Charleston, West Virginia 25301-3203
Telephone: 304-340-1100
ecappellanti@jacksonkelly.com

and

Michael Beal, Esq.  (USDC # 1253)
*Pro Hac Vice Admission Pending*
SC Bar No. 0598
BEAL, LLC
1301 Gervais Street, Ste. 1040
Columbia, SC  29201
mbeal@bealLLC.com
Pro Hac Vice Pending

4876-7345-7322.v3

## SCHEDULE 1 TO VERIFIED COMPLAINT

| Instrument | Date | County and State | Book/ Page | Borrower | Receivership Authorization Provision |
|---|---|---|---|---|---|
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing | 6/27/2023 | Greenbrier County, WV | 883/43 | AWP AWPI | 5(a)(ii)[1] |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing | 9/27/2023 | Greenbrier County, WV | 886/62 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing | 6/29/2023 | Raleigh County, WV | 5080/4522 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (Second Lien) | 9/25/2023 | Raleigh County, WV | 5081/2366 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing | 10/6/2023 | Raleigh County, WV | 5081/3213 | AWP, AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Security Agreement and Fixture Filing (Second Lien) | 9/28/2005 | Mercer County, WV | 1057/625 | AWP | 8.4[2] |
| Credit Line Deed of Trust, Security Agreement, Financing Statement, Timber and Fixture Filing | 4/14/2014 | Mercer County, WV | 1275/142 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Security Agreement, Financing Statement, Timber and Fixture Filing | 4/14/2014 | Mercer County, WV | 1275/492 | AWP AWPI | 5(a)(ii) |

---

[1] "have a receiver appointed by any court having jurisdiction to take charge of the Property, or any part thereof, and collect, receive and apply the rents, issues and profits thereof."

[2] Subject to the terms of the Subordination Agreement, Grantee may petition a court of competent jurisdiction to appoint a receiver of the Property. Such appointment may be made either before or after sale, without notice, without regard to the solvency of insolvency of Grantor at the time of application for such receiver, without regard to the then value of the Property or whether the Property shall then be occupied as a homestead or not, and without regard to whether Grantor has committed waste or allowed deterioration of the Property, and Grantee or any agent of Grantee may be appointed as such receiver.

1

| Instrument | Date | County and State | Book/ Page | Borrower | Receivership Authorization Provision |
|---|---|---|---|---|---|
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing | 6/29/2023 | Mercer County, WV | 1459/236 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing (First Lien) | 10/6/2023 | Mercer County, WV | 1464/260 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment of Rents and Leases, Security Agreement, Financing Statement, Timber, and Fixture Filing | 6/2/2020 | Preston County, WV | 614/240 | AWP | 6(a)(ii)[3] |
| Credit Line Deed of Trust, Assignment of Rents and Leases, Security Agreement, Financing Statement, Timber, and Fixture Filing. | 3/11/2022 | Preston County, WV | 646/805 | AWP | 6(a)(ii)[4] |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing | 6/27/2023 | Preston County, WV | 660/359 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (Second Lien) | 9/15/2023 | Preston County, WV | 662/666 | AWP, AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (First Lien) | 10/24/2023 | Preston County, WV | 664/163 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (First Lien) | 10/20/2023 | Preston County, WV | 664/251 | AWP AWPI | 5(a)(ii) |

[3] See footnote 1
[4] See footnote 1

| Instrument | Date | County and State | Book/ Page | Borrower | Receivership Authorization Provision |
|---|---|---|---|---|---|
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing (Second Lien) | 9/15/2023 | Randolph County, WV | 631/519 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing (First Lien) | 9/27/2023 | Randolph County, WV | 631/782 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing (Second Lien) | 9/15/2023 | Grant County, WV | 318/672 | AWP AWPI JPC Limited Liability Company | 5(a)(ii) |
| A Credit Line Deed of Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (Second Lien) | 9/15/2023 | Pendleton County, WV | 176/403 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (First Lien) | 9/27/2023 | Pendleton County, WV | 176/506 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing | 4/14/2014 | Webster County, WV | 178/163 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing | 4/14/2014 | Webster County, WV | 178/194 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing | 4/14/2014 | Webster County, WV | 179/78 | AWP AWPI | 5(a)(ii) |

| Instrument | Date | County and State | Book/ Page | Borrower | Receivership Authorization Provision |
|---|---|---|---|---|---|
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber and Fixture Filing | 6/7/2023 | Webster County, WV | 197/658 | AWP AWPI | 5(a)(ii) |
| A Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing | 9/15/2023 | Wetzel County, WV | 455/322 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (First Lien) | 9/27/2023 | Monongalia County, WV | 2581/424 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (First Lien) | 09/27/2023 | Marion County, WV | 1331/1 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (First Lien) | 9/27/2023 | Upshur County, WV | 663/745 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing (First Lien) | 9/27/2023 | Barbour County, WV | 462/477 | AWP AWPI | 5(a)(ii) |
| Credit Line Deed of Trust, Assignment, Security Agreement, Financing Statement, Timber, and Fixture Filing | 10/24/2023 | Barbour County, WV | 463/334 | AWP AWPI | 5(a)(ii) |
| Open-End Mortgage, Security Agreement, Assignment of Leases and Rents, Fixture | 3/31/2023 | Clarion County, PA | 2023/1493 | AWP AWPI | 17(b)(iii)[5] |

---

[5] "Mortgagee may, upon any proper action or proceeding being commenced for the foreclosure of this Mortgage, apply for, and Mortgagee as a matter of right, without consideration of the value of the Mortgaged Property as security for the amount due Mortgagee, or of the solvency of any person, firm or corporation obligated for the payment of such amount, shall be entitled to the appointment by any competent court or tribunal, without prior demand or notice to any party, or of a receiver of rents and profits and rental value of the Mortgaged Property . . ."

| Instrument | Date | County and State | Book/ Page | Borrower | Receivership Authorization Provision |
|---|---|---|---|---|---|
| Filing, Timber Filing and Financing Statement | | | | | |
| Deed of Trust and Assignment of Leases and Rents | 10/20/2023 | Garrett County, MD | 2521/426 | AWP | 3.3[6] |

---

[6] Upon the occurrence of an EVENT OF DEFAULT, the TRUSTEES and/or the BENEFICIARY shall be entitled to have a receiver appointed to operate, manage, preserve, assign and/or sell the SECURED PROPERTY.

## Schedule 2 to Verified Complaint

| | Document | Date | Debtor | Secured Party | Brief Collateral Description |
|---|---|---|---|---|---|
| 1 | Security Agreement | 09/28/2005 | Allegheny Wood Products, Inc. | United Bank, Inc. | Accounts, contract rights, Chattel Paper, General Intangibles, Payment Intangibles, Instruments and Documents, Inventory, etc. now owned or hereafter acquired and standing timber on identified real estate. |
| 2 | Security Agreement | 09/28/2005 | Allegheny Wood Products, Inc. | United Bank, Inc. | Fixtures and Equipment specifically enumerated at Marble (Clarion County, Pennsylvania), Green Valley and Enfield (Halifax County, North Carolina) at real property identified in the Security Agreement. |
| 3 | Security Agreement | 06/02/2020 | Allegheny Wood Products, Inc. | United Bank | All assets including Inventory, Accounts, Fixtures, and Goods, and Equipment now owned or hereafter acquired located on, used or useful at the Kingwood, WV Sawmill Complex (Preston County, West Virginia). |
| 4 | Security Agreement | 03/11/2022 | Allegheny Wood Products, Inc.<br><br>Allegheny Wood Products International, Inc. | United Bank | All of Debtors' Equipment and Fixtures now owned or hereafter acquired located at Debtor's sawmill facilities located in Kingwood (Preston County, West Virginia), Cowan (Webster County, West Virginia), Princeton (Mercer County, West Virginia), Beckley (Raleigh County, West Virginia), and Smoot (Greenbrier County, West Virginia). |
| 5 | Security Agreement | 03/31/2023 | Allegheny Wood Products, Inc.<br><br>Allegheny Wood Products International, Inc. | United Bank | All assets of Debtor including Inventory, Accounts, Equipment, Fixtures, and Goods located on, used, or useful in the operation of the sawmill complex in Clarion County, Pennsylvania (Marble). |
| 6 | Security Agreement | 06/27/2023 | Allegheny Wood Products, Inc.<br><br>Allegheny Wood Products International, Inc. | United Bank | All assets of Debtor now owned or hereafter acquired including all Inventory, Accounts, Equipment, Fixtures, and Goods. Note that Equipment is limited to that located in Webster (Cowen), Raleigh (Beckley), Mercer (Princeton), Greenbrier (Smoot), and Preston (Kingwood) Counties in West Virginia, and Clarion County (Marble) in Pennsylvania. |
| 7 | Security Agreement | 03/31/2023 | Allegheny Wood Timber Products, LLC | United Bank | All assets of Debtor now owned or hereafter acquired or hereafter acquired including all Inventory, Accounts, Equipment, Fixtures, and Goods. |

4865-1839-6073.v1

## Schedule 3 to Verified Complaint

| Debtor | UCC# | File Date | Secured Party | Collateral |
|--------|------|-----------|---------------|------------|
| ALLEGHENY WOOD PRODUCTS, INC. | 2016E071800098 | Filed July 18, 2016 Continuation filed June 10, 2021 | United Bank | -Volvo L 90H Wheel Loader ser#VCE0L90HA0S623258<br>-Volvo L 120H Wheel Loader ser#VCEL120HA0S632035<br>-Volvo L 120G Wheel Loaders ser#VCEL120GL00031261 |
| ALLEGHENY WOOD PRODUCTS, INC. | 2018E050200062 | Filed May 2, 2018<br><br>Amended December 29, 2021<br><br>Amended January 14, 2022<br><br>Amended April 22, 2022<br><br>Continuation filed April 3, 2023 | United Bank | The Collateral covered by this UCC Financing Statement shall be the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, and wherever located:<br>**(i)** All assets of Debtor, including, but not limited to, all Inventory, Accounts, Equipment, and Fixtures, as such terms are defined in subsection (iii) below, and all earnest money deposits held by Debtor, and materials.<br>**(ii)** To the extent not included in the items of Collateral set forth in subsection (i) of this Section 2:<br>**(a)** All attachments, Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section.<br>**(b)** All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section.<br>**(c)** All Accounts, contract rights, General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.<br>**(d)** All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.<br>**(e)** All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.<br>**(f)** All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or |

## Schedule 3 to Verified Complaint

|  |  |  |  | demand, general or special), Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts. **(g)** All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section.<br><br>Finally, there is a second attachment describing the parcel of land in Pocahontas County in Deed Book 367 page 18<br>DEFINITIONS:<br><br>(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance: (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;<br><br>(b) "Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, machinery, furniture, fixtures, office equipment and vehicles;<br><br>(c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code, and shall include, without limitation, goods that have become so related to particular real property that an interest in them arises under property law;<br><br>(d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction; |
|---|---|---|---|---|

2

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | (e) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor;<br><br>(f) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed, Debtor's log inventory, Debtor's lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtor's business;<br><br>(g) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence.<br><br>SCHEDULE 1: The real estate described as Parcel 16 in the Special Warranty Deed recorded in the Office of the Clerk of the County Commission of Pocahontas County, West Virginia in Book 367, at page 18.<br><br>**December 29, 2021 Amendment used to delete the following equipment from the original filing: One (1) 2021 Komatsu Wheel Loader, Model WA380-8; S/N: A75731 One (1) 2022 Komatsu Wheel Loader, Model WA380-8; S/N: A75791 One (1) Newman G-280 Rotary Knife Grinder S/N: 15889**<br><br>**January 14, 2022 Amendment used to delete the following: Two (2) Komatsu Model WA320-8 Wheel Loaders With all attachments and accessions S/Ns: A51044 and A51045** |

3

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | **April 22, 2022 Amendment: the following is hereby deleted: One (1) Wastewood Chipper, Right Hand, Model 80 S/N: 0191 One (1) 2022 Peterbilt 337 Truck VIN: 2NP2HJ7X6NM760057 with the following: Stellar 12630 Telescopic Crane S/N: 180894 and Stellar Mechanic Body (1) Band Mill -- right hand S/N: 72MA-671 (1) Band Mill -- left hand S/N: 72MA-670** |
| ALLEGHENY WOOD PRODUCTS, INC. | 2018E050200072 | Filed May 2, 2018<br><br>Amended February 8, 2021 collateral change<br><br>Amended December 29, 2021 collateral change<br><br>Amended January 14, 2022, collateral change<br><br>Amended April 22, 2022, collateral change<br><br>Continuation filed April 3, 2023 | United Bank | The Collateral covered by this UCC Financing Statement shall be the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, and wherever located:<br><br>**(i)** All assets of Debtor, including, but not limited to, all Inventory, Accounts, Equipment, and Fixtures, as such terms are defined in subsection (iii) below, and all earnest money deposits held by Debtor, and materials.<br><br>**(ii)** To the extent not included in the items of Collateral set forth in subsection **(i)** of this Section 2:<br><br>**(a)** All attachments, Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section.<br><br>**(b)** All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section.<br><br>**(c)** All Accounts, contract rights, General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.<br><br>**(d)** All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.<br><br>**(e)** All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of |

## Schedule 3 to Verified Complaint

|  |  |  |  | Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**(f)** All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or demand, general or special), Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts.

**(g)** All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section.

DEFINITIONS:

(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance: (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;

(b) "Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, machinery, furniture, fixtures, office equipment and vehicles;

(c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code, and shall include, without limitation, goods that have become so related to particular real property that an interest in them arises under property law; |
|--|--|--|--|--|

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | (d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction; <br><br> (e) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor; <br><br> (f) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed, Debtor's log inventory, Debtor's lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtor's business; <br><br> (g) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence. <br><br> **February 8, 2021: Amended to delete following collateral "solely as related to Equipment of Debtor located at the historical facility of Debtor in Clarion County, Pennsylvania."** <br><br> **December 29, 2021: Amended to delete the following collateral "To delete the following from the original filing: One (1) 2021 Komatsu Wheel Loader, Model WA380-8; S/N: A75731 One (1) 2022 Komatsu Wheel Loader, Model WA380-8; S/N: A75791 One (1) Newman G-280 Rotary Knife Grinder S/N: 15889"** |

6

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | **January 14, 2022: Amended to delete the following collateral "The following is hereby deleted: Two (2) Komatsu Model WA320-8 Wheel Loaders With all attachments and accessions S/Ns: A51044 and A51045"**<br><br>**April 22, 2022: The following is hereby deleted: "One (1) Wastewood Chipper, Right Hand, Model 80 S/N: 0191 One (1) 2022 Peterbilt 337, Truck VIN: 2NP2HJ7X6NM760057 with the following: Stellar 12630 Telescopic Crane S/N: 180894 and Stellar Mechanic, Body (1) Band Mill -- right hand S/N: 72MA-671 (1) Band Mill -- left hand S/N: 72MA-670."** |
| ALLEGHENY WOOD PRODUCTS, INC. | 2020E010200003 | January 2, 2020 | United Bank | All the right, title, and interest of Allegheny Wood Products, Inc. ("Debtor"), in and to the membership interests held by Debtor in Allegheny Wood Timber Products, LLC, a West Virginia limited liability company, wherever located and whether now owned or hereafter acquired or arising, including, without limitation, (i) all payments or distributions, whether in cash, property, or otherwise, at any time owing or payable to the Debtor on account of its interest as a member in the LLC or in the nature of a management, investment banking, or other fee paid or payable by the LLC to the Debtor, (ii) all the Debtor's rights and interests under any governance documents, including all voting and management rights and all rights and interests under any governance documents, including all voting and management rights and all rights to grant or withhold consents or approvals, (iii) all rights of access and inspection to and use of all books and records of the LLC, (iv) all other rights, interests, property or claims to which the Debtor may be entitled in its capacity as a member of the LLC, and (v) all proceeds and products of any of the foregoing. |
| ALLEGHENY WOOD PRODUCTS, INC. | 2020E061600064 | June 16, 2020<br><br>Amended December 31, 2021, collateral change.<br><br>Amended January 14, 2021, collateral change. | United Bank | Except as provided below, the word "Collateral" means the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, that is located on, used or useful in the operation of or otherwise related to or pertinent to Debtor's sawmill complex located in Kingwood, West Virginia, as more particularly described on Exhibit A attached hereto:<br><br>(i) All assets of Debtor, including, but not limited to, all Inventory, Accounts, Equipment, Fixtures and Goods, as such terms are defined in subsection (iii) below. |

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | Amended April 22, 2022, collateral change. | | (ii) To the extent not included in the items of Collateral set forth in subsection (i):<br><br>(a) All attachments, Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described herein.<br><br>(b) All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described herein.<br><br>(c) All Accounts, contract rights, General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described herein.<br><br>(d) All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described herein.<br><br>(e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.<br><br>(f) All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or demand, general or special), Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts.<br><br>(g) All guaranties, claims, rights, remedies, and privileges relating to any of the property described herein.<br><br>DEFINITIONS |

4886-5776-5799.v2

## Schedule 3 to Verified Complaint

|  |  |  |  | (a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance: (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;<br><br>(b) Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, all tools and machines to transport, position, cut and otherwise aid in converting logs into lumber or other processed woods and all mill machinery, including but not limited to, saw mill equipment, rolling stock, debarkers, log decks, conveyors, motors, controls, lumber grading sheds, rips, gangs, saws, feeder mechanisms, generators, cutters, pallets, cars, trucks, lift trucks, cubers, dryers, grinders, lumpbreakers, rolling mills, pulverizers, lab mills, and all other tools, machinery, furniture, fixtures, office equipment and vehicles;<br><br>(c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code, and shall include, without limitation, goods that have become so related to particular real property that an interest in them arises under property law;<br><br>(d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including choses in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction;<br><br>(e) "Goods" means all "goods" as defined in Article 9 of the Uniform |
| --- | --- | --- | --- | --- |

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | Commercial Code and shall include, without limitation, standing timber, standing timber which is to be cut and removed under a conveyance or contract for sale, and cut timber.<br><br>(f) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor;<br><br>(g) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed, Debtor's log inventory, Debtor's lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtor's business;<br><br>(h) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence.<br><br>That certain tract or parcel of real estate lying and being situate in Kingwood District, Preston County, West Virginia, on the waters of Falling Run, lying on the western edge of Cheat River and on the eastern edge of the Baltimore and Ohio Railroad and lying to the north of old West Virginia Secondary Route No. 7, and the old Caddell Bridge. Being a part of the same real estate conveyed to Allegheny Wood Products, Inc., by Inter-State Lumber Company, Inc., in a Deed dated the 3rd day of June, 1992, and recorded in the Office of the Clerk of the County Commission of Preston County, West Virginia, in Deed Book 566 at page 773.<br><br>**Amended December 31, 2021: "To delete the following from the original filing: One (1) 2021 Komatsu Wheel Loader, Model WA380-8; S/N: A75731 One (1) 2022 Komatsu Wheel Loader,** |

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | **Model WA380-8; S/N: A75791 One (1) Newman G-280 Rotary Knife Grinder S/N: 15889."**<br><br>**Amended January 14, 2022: "The following is hereby deleted: Two (2) Komatsu Model WA320-8 Wheel Loaders With all attachments and accessions S/Ns: A51044 and A51045."**<br><br>**Amended April 22, 2022: "The following is hereby deleted: One (1) Wastewood Chipper, Right Hand, Model 80 S/N: 0191 One (1) 2022 Peterbilt 337 Truck VIN: 2NP2HJ7X6NM760057 with the following: Stellar 12630 Telescopic Crane S/N: 180894 and Stellar Mechanic Body (1) Band Mill -- right hand S/N: 72MA-671 (1) Band Mill -- left hand S/N: 72MA-670."** |
| ALLEGHENY WOOD PRODUCTS, INC. | 2023E053100071 | May 31, 2023 | United Bank | The Collateral covered by this UCC Financing Statement shall be the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, and wherever located: (i) All of Debtor's, Equipment and Fixtures located at Debtor's sawmill facilities located in Kingwood, Cowen, Princeton, Beckley, and Smoot, West Virginia. (ii) To the extent not included in the items of Collateral set forth in subsection (i) of this Section 2:<br><br>(a) All attachments. Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section.<br><br>(b) All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section.<br><br>(c) All Accounts, contract rights. General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.<br><br>(d) All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section. |

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | (e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.<br><br>(f) All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or demand, general or special), Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts.<br><br>(g) All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section.<br><br>(iii) As used herein, the following terms shall have the following meanings:<br><br>(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance:(i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered;(iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;<br><br>(b) "Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, machinery, furniture, fixtures, office equipment and vehicles; |

12

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | (c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code, and shall include, without limitation, goods that have become so related to particular real property that an interest in them arises under property law;<br><br>(d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction;<br><br>(e) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor;<br><br>(f) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed. Debtor's log inventory. Debtor's lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtor's business;<br><br>(g) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence. |
| ALLEGHENY WOOD PRODUCTS, INC. with ALLEGHENY WOOD PRODUCTS | 2023E041400059 | April 14, 2023 | United Bank | The Collateral covered by this UCC Financial Statement shall be the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, that is located on, used or useful in the operation of or otherwise related to or pertinent to Debtor's sawmill complex located in Clarion County, |

13

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| INTERNATIONAL, INC. as second Debtor | | | | Pennsylvania, as more particularly described on Exhibit A attached hereto:<br><br>(i) All assets of Debtor, including, but not limited to, all Inventory, Accounts, Equipment, Fixtures and Goods, as such terms are defined in subsection (iii) below. (ii) To the extent not included in the items of Collateral set forth in subsection (i) of this Section 2:<br><br>(a) All attachments. Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section.<br><br>(b) All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section.<br><br>(c) All Accounts, contract rights (including stumpage). General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.<br><br>(d) All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.<br><br>(e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.<br><br>(f) All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or demand, general or special). Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts. |

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | (g) All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section.<br><br>(iii) As used herein, the following terms shall have the following meanings:<br><br>(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance:(i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of;(ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;<br><br>(b) "Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, all tools and machines to transport, position, cut and otherwise aid in converting logs into lumber or other processed woods and all mill machinery, including but not limited to, saw mill equipment, rolling stock, debarkers, log decks, conveyors, motors, controls, lumber grading sheds, rips, gangs, saws, feeder mechanisms, generators, cutters, pallets, cars, trucks, lift trucks, cubers, dryers, grinders, lumbreakers, rolling mills, pulverizers, lab mills, and all other tools, machinery, furniture, fixtures, office equipment and vehicles;<br><br>(c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code, and shall include, without limitation, goods that have become so related to particular real property that an interest in them arises under property law;<br><br>(d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including choses in action, other |

15

## Schedule 3 to Verified Complaint

| | | | | than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction;<br><br>(e) "Goods" means all "goods" as defined in Article 9 of the Uniform Commercial Code and shall include, without limitation, standing timber, standing timber which is to be cut and removed under a conveyance or contract for sale, and cut timber;<br><br>(f) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor;<br><br>(g) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed. Debtor's log inventory. Debtor's lumber inventory. and all cut timber, and supplies and materials used or consumed in Debtor's business;<br><br>(h) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence.<br><br>Land Included: Tax Parcels Identification Number 34-010-183-002 (Washington Township, Clarion County, Pennsylvania), 34-010-153-000 (Washington Township, Clarion County, Pennsylvania), 34-011-026-000 (Washington Township, Clarion County, Pennsylvania), 34-011-027-000 (Washington Township, Clarion County, Pennsylvania) |
| ALLEGHENY WOOD | 2023E062800024 | June 28, 2023 | United Bank | The Collateral covered by this UCC Financing Statement shall be the following described property of Debtor, whether now owned or |

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| PRODUCTS, INC. with ALLEGHENY WOOD PRODUCTS INTERNATIONAL, INC. as second Debtor | | | | hereafter acquired, whether now existing or hereafter existing, that is located on, used or useful in the operation of or otherwise related to or pertinent to Debtor's operations:<br><br>(i) All assets of Debtor, including, but not limited to, all Inventory, Accounts, Equipment, Fixtures and Goods, as such terms are defined in subsection (iii) below.<br><br>(ii) To the extent not included in the items of Collateral set forth in subsection (i) of this Section 2:<br><br>(a) All attachments. Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section.<br><br>(b) All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section.<br><br>(c) All Accounts, contract rights. General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.<br><br>(d) All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.<br><br>(e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.<br><br>(f) All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or |

17

## Schedule 3 to Verified Complaint

|  |  |  |  | demand, general or special), Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts.<br><br>(g) All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section.<br><br>(iii) As used herein, the following terms shall have the following meanings:<br><br>(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance:(i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered;(iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;<br><br>(b) "Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, all tools and machines to transport, position, cut and otherwise aid in converting logs into lumber or other processed woods and all mill machinery, including but not limited to, saw mill equipment, rolling stock, debarkers, log decks, conveyors, motors, controls, lumber grading sheds, rips, gangs, saws, feeder mechanisms, generators, cutters, pallets, cars, trucks, lift trucks, cubers, dryers, grinders, lumpbreakers, rolling mills, pulverizers, lab mills, and all other tools, machinery, furniture, fixtures, office equipment and vehicles, located in Webster, Raleigh, Mercer, Greenbrier and Preston Counties, West Virginia, and in Clarion County, Pennsylvania, as more particularly described on Exhibit A attached hereto;<br><br>(c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code located in Webster, Raleigh, Mercer, Greenbrier and Preston Counties, West Virginia, and in Clarion |
|---|---|---|---|---|

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | County, Pennsylvania, and shall include, without limitation, goods that have become so related to particular the Property that an interest in them arises under property law; |
| | | | | (d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction; |
| | | | | (e) "Goods" means all "goods" as defined in Article 9 of the Uniform Commercial Code and shall include, without limitation, standing timber, standing timber which is to be cut and removed under a conveyance or contract for sale, and cut timber |
| | | | | (f) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor; |
| | | | | (g) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed. Debtor's log inventory. Debtor's lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtor's business; |
| | | | | (h) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence. |
| ALLEGHENY WOOD | 2023E062900042 | June 29, 2023 | United Bank | The Collateral covered by this UCC Financing Statement shall be the following described property of Debtor, whether now owned or |

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| PRODUCTS, INC. with ALLEGHENY WOOD PRODUCTS INTERNATIONAL, INC. as second Debtor | | | | hereafter acquired, whether now existing or hereafter existing, that is located on, used or useful in the operation of or otherwise related to or pertinent to Debtor's operations:<br><br>A. All those certain lots, tracts and parcels of land, situate in Greenbrier, Mercer, Raleigh, Preston and Webster Counties, West Virginia, and being more specifically described in Exhibit A attached hereto and by this reference incorporated in and made a part hereof (the "Real Property");<br><br>B. All right, title and interest of Debtor in and to any and all estates, rights, tenements, hereditaments, privileges, easements, reversions, remainders, rights of way, and appurtenances of any kind benefiting or appurtenant to the Real Property; all means of access to and from the Real Property, whether public or private; all streets, sidewalks, alleys, passages, ways, water courses, water and mineral rights relating to the Real Property; and all other claims or demands of Debtor, either at law or in equity, in possession or expectancy of, in or to the Real Property, Timber, Improvements or all or any portion of the Real Property ( all of the foregoing are collectively herein called the "Appurtenances");<br><br>C. All right, title and interest of Debtor in and to any standing timber and timber to be cut located on the Real Property (all of the foregoing is collectively herein called the "Timber");<br><br>D. All right, title and interest of Debtor in and to all rents, income, receipts, revenues, issues and profits derived from the Real Property; and all right, title and interest of Debtor in and to all existing and future contracts, purchase agreements, tenancies, leases, subleases and licenses relating to the Real Property, and/or the Timber, and any amendments, extensions, modifications or revisions thereto (hereinafter all existing and future contracts, purchase agreements, tenancies, leases, subleases and licenses of the Real Property and/or the Timber are collectively referred to as the "Leases") together with all rentals, income, profits and other monies due and which shall become due to the Debtor under the Leases; provided, however, that so long as no Event of Default has occurred and is continuing hereunder Debtor shall be entitled to collect and receive all said rents, income, receipts, revenues, issues and profits; E. All right, title |

20

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | and interest of Debtor in and to all works, buildings, structures, properties, facilities, replacements, furnishings, fixtures, fittings and other improvements and property of every kind and character now or hereafter located or erected on the Real Property, together with all right, title and interest of Debtor in all building or construction materials, equipment, appliances, machinery, plant equipment, fittings, supplies, apparatus, furniture, fixtures and other articles of every kind or nature whatsoever now or hereafter found on, affixed to or attached to the Real Property, and now or hereafter owned by Debtor, including, without limitation, all motors, boilers, engines, and devices for the operation of pumps, and all heating, electrical, lighting, power, plumbing, air conditioning, refrigerating and ventilation equipment (all of the foregoing are collectively herein called the "Improvements") (the Real Property, Appurtenances, Timber and Improvements herein together called the "Real Property Collateral"); <br><br> F. All proceeds of any and all of the foregoing and to the extent not otherwise included, all payments under insurance (whether or not the party secured hereby is the loss payee thereof) and under any indemnity, warranty and guaranty by reason of loss or otherwise with respect to any of the foregoing; and G. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of all or any part of the Real Property, the Timber and the Improvements (to the extent of Debtor's interest therein), or for conveyance in lieu of condemnation in such amounts. |
| ALLEGHENY WOOD PRODUCTS INTERNATIONAL, INC. | 201438816029 | September 30, 2014 <br><br> Continuation filed August 19, 2019 <br><br> Collateral change February 8, 2021 | United Bank | The Collateral covered by this UCC Financing Statement shall be the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, and wherever located: <br><br> (i) All assets of Debtor, including, but not limited to, all Inventory, Accounts, Equipment, and Fixtures, as such terms are defined in subsection (iii) below, and all earnest money deposits held by Debtor, and materials; provided however that the Collateral shall not include Equipment of any of Debtor's facilities other than the historical facilities in Mercer and Webster Counties, West Virginia, and Clarion County Pennsylvania, and Debtor's newly acquired |

## Schedule 3 to Verified Complaint

|  |  |  |  | facilities in Greenbrier and Raleigh Counties West Virginia and Washington County, Ohio.<br><br>(ii) To the extent not included in the items of Collateral set forth in subsection (i) of this Section 2:<br><br>(a) All attachments, Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section.<br><br>(b) All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section.<br><br>(c) All Accounts, contract rights, General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.<br><br>(d) All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.<br><br>(e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.<br><br>(f) All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or demand, general or special), Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts.<br><br>(g) All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section. |
|---|---|---|---|---|

## Schedule 3 to Verified Complaint

|  |  |  |  | DEFINITION:<br>(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtors from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights of payment of a monetary obligation, whether or not earned by performance: (i) for property that has been or is to be sold, leased, licensed, assigned or otherwise disposed of; (ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card.<br><br>(b) "Equipment" shall mean all equipment as defined in the Uniform Commercial Code located at Debtors' historical facilities in Mercer and Webster Counties, West Virginia, and Clarion County, Pennsylvania, and Debtor's newly acquired facilities in Greenbrier and Raleigh Counties, West Virginia, and Washington County, Ohio, and shall include, without limitation, machinery, furniture, fixtures, office equipment and vehicles;<br><br>(c) "Fixtures" shall mean fixtures as defined in the Uniform Commercial Code located at Debtors' historical facilities in Mercer and Webster Counties, West Virginia, and Clarion County, Pennsylvania, and Debtor's newly acquired facilities in Greenbrier and Raleigh Counties, West Virginia, and Washington County, Ohio, and shall include, without limitation goods that have become so related to particular real property that an interest in them arises under property law;<br><br>(d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter of credit rights, letters of credit, money and oil, gas or other minerals before extraction; |
|---|---|---|---|---|

## Schedule 3 to Verified Complaint

| | | | | |
|---|---|---|---|---|
| | | | | (e) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of monetary obligation, is not itself a security agreement or lease, and is a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor;<br><br>(f) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed, Debtors' log inventory, Debtors' lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtors' business;<br><br>(g) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the state of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence.<br><br>**Collateral Change February 8, 2021 "Delete Collateral solely as related to Equipment of Debtor located at the historical facility of Debtor in Clarion County, Pennsylvania."** |
| ALLEGHENY WOOD PRODUCTS INTERNATIONAL, INC. | 2018E050200075 | May 2, 2018<br><br>Continuation filed April 3, 2023 | United Bank | The Collateral covered by this UCC Financing Statement shall be the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, and wherever located:<br><br>(i) All assets of Debtor, including, but not limited to, all Inventory, Accounts, Equipment, and Fixtures, as such terms are defined in subsection (iii) below, and all earnest money deposits held by Debtor, and materials.<br><br>(ii) To the extent not included in the items of Collateral set forth in subsection (i) of this Section 2: |

## Schedule 3 to Verified Complaint

|  |  |  |  | (a) All attachments, Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section.

(b) All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section.

(c) All Accounts, contract rights, General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(d) All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

(e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

(f) All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or demand, general or special), Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts.

(g) All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section

DEFINITIONS:
(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, |
|---|---|---|---|---|

## Schedule 3 to Verified Complaint

|  |  |  |  | other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance: (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;

(b) "Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, machinery, furniture, fixtures, office equipment and vehicles;

(c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code, and shall include, without limitation, goods that have become so related to particular real property that an interest in them arises under property law;

(d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction;

(e) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor;

(f) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for |

26

## Schedule 3 to Verified Complaint

| | | | | sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed, Debtor's log inventory, Debtor's lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtor's business;<br><br>(g) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence. |
| --- | --- | --- | --- | --- |
| ALLEGHENY WOOD PRODUCTS INTERNATIONAL, INC. | 2023E053100074 | May 31, 2023 | United Bank | The Collateral covered by this UCC Financing Statement shall be the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, and wherever located:<br><br>(i) All of Debtor's, Equipment and Fixtures located at Debtor's sawmill facilities located in Kingwood, Cowen, Princeton, Beckley, and Smoot, West Virginia.<br><br>(ii) To the extent not included in the items of Collateral set forth in subsection (i) of this Section 2:<br><br>(a) All attachments, Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section.<br><br>(b) All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section.<br><br>(c) All Accounts, contract rights. General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.<br><br>(d) All cash and non-cash Proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section. |

## Schedule 3 to Verified Complaint

|  |  |  |  | (e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.<br><br>(f) All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or demand, general or special), Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts.<br><br>(g) All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section.<br><br>(iii) As used herein, the following terms shall have the following meanings:<br><br>(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance:(i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered;(iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;<br><br>(b) "Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, machinery, furniture, fixtures, office equipment and vehicles;<br><br>(c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code, and shall include, without limitation, |
|---|---|---|---|---|

28

## Schedule 3 to Verified Complaint

| | | | | goods that have become so related to particular real property that an interest in them arises under property law; |
|---|---|---|---|---|
| | | | | (d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction; |
| | | | | (e) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor; |
| | | | | (f) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned, reclaimed or repossessed. Debtor's log inventory. Debtor's lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtor's business; |
| | | | | (g) "Uniform Commercial Code" means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence. |
| ALLEGHENY WOOD TIMBER PRODUCTS, LLC | 2023E041400066 | April 14, 2023 | United Bank | The Collateral covered by this UCC Financial Statement shall be the following described property of Debtor, whether now owned or hereafter acquired, whether now existing or hereafter existing, and wheresoever located:

(i) All assets of Debtor, including, but not limited to, all Inventory, Accounts, Equipment, Fixtures and Goods, as such terms are defined in subsection (iii) below. |

29

## Schedule 3 to Verified Complaint

|  |  |  |  | (ii) To the extent not included in the items of Collateral set forth in subsection (i) above: |
| --- | --- | --- | --- | --- |
|  |  |  |  | (a) All attachments. Accessions, as such term is defined in the Uniform Commercial Code, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described in this Collateral section. |
|  |  |  |  | (b) All Products and Proceeds, as such terms are defined in the Uniform Commercial Code, of any of the property described in this Collateral section. |
|  |  |  |  | (c) All Accounts, contract rights. General Intangibles, Instruments, as such terms are defined below, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section. |
|  |  |  |  | (d) All cash and non-cash Proceeds(including insurance proceeds)from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section. |
|  |  |  |  | (e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Debtor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media. |
|  |  |  |  | (f) All moneys, credits, and other property of any nature whatsoever of Debtor now or hereafter in the possession of, in transit to or from, under the custody or control of, or on deposit with (whether held by Debtor individually or jointly with another, and whether time or demand, general or special). Secured Party or any affiliate of Secured Party, including but not limited to cash collateral accounts. |
|  |  |  |  | (g) All guaranties, claims, rights, remedies, and privileges relating to any of the property described in this Collateral section. |
|  |  |  |  | Definitions: |

## Schedule 3 to Verified Complaint

|  |  |  |  | (iii) As used herein, the following terms shall have the following meanings:<br><br>(a) "Accounts" shall mean accounts as defined in the Uniform Commercial Code and shall include, without limitation, open accounts, accounts receivable, rights to require payment from others, other amounts and obligations owing to Debtor from whatever source arising, contract rights, chattel paper, notes receivable, instruments and documents (including warehouse receipts), stumpage, and any other rights to payment of a monetary obligation, whether or not earned by performance:(i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of; (ii) for services rendered or to be rendered; (iii) for a policy of insurance issued or to be issued; and (iv) for a secondary obligation incurred or to be incurred arising out of the use of a credit or charge card or information contained on or for use with the card;<br><br>(b) "Equipment" shall mean all of Debtor's equipment as defined in the Uniform Commercial Code, and shall include, without limitation, all tools and machines to transport, position, cut and otherwise aid in converting logs into lumber or other processed woods and all mill machinery, including but not limited to, saw mill equipment, rolling stock, debarkers, log decks, conveyors, motors, controls, lumber grading sheds, rips, gangs, saws, feeder mechanisms, generators, cutters, pallets, cars, trucks, lift trucks, cubers, dryers, grinders, lumpbreakers, rolling mills, pulverizers, lab mills, and all other tools, machinery, furniture, fixtures, office equipment and vehicles;<br><br>(c) "Fixtures" shall mean all of Debtor's fixtures as defined in the Uniform Commercial Code, and shall include, without limitation, goods that have become so related to particular real property that an interest in them arises under property law;<br><br>(d) "General Intangibles" shall mean general intangibles as defined in the Uniform Commercial Code and shall include, without limitation, any personal property, including choses in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction; |
|---|---|---|---|---|

31

## Schedule 3 to Verified Complaint

|  |  |  |  | (e) "Goods" means all "goods" as defined in Article 9 of the Uniform Commercial Code and shall include, without limitation, standing timber, standing timber which is to be cut and removed under a conveyance or contract for sale, and cut timber; |
|--|--|--|--|--|
|  |  |  |  | (f) "Instruments" shall mean instruments as defined in the Uniform Commercial Code and shall include, without limitation, a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment and any certificates of deposit now or hereafter purchased by Debtor; |
|  |  |  |  | (g) "Inventory" shall mean inventory as defined in the Uniform Commercial Code and shall include, without limitation, goods of every nature, including, without limitation, stock-in-trade, raw materials, work in process, items leased or licensed, items held for sale or lease, or furnished or to be furnished under contracts of sale or lease, goods that are returned. 4/4reclaimed or repossessed, Debtor's log inventory. Debtor's lumber inventory, and all cut timber, and supplies and materials used or consumed in Debtor's business; |
|  |  |  |  | (h) "Uniform Commercial Code "means the Uniform Commercial Code now or hereafter in effect in the State of West Virginia, except to the extent the Uniform Commercial Code of another state shall take precedence. |

32

## **VERIFICATION**

I, _M. Troy Lemmsters_, declare under penalty of perjury that (1) I am the Special Asset Manager - SVP of United Bank, and (2) the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge and belief.

_3/4/24_
Dated

_____
Name

13

4876-7345-7322.v3