# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED BANK <br> 11185 Fairfax Boulevard <br> Fairfax, VA 22023 <br><br> Plaintiff, <br> v. <br><br> ALLEGHENY WOOD PRODUCTS, INC. <br> 240 Airport Road <br> Petersburg, WV 26847 <br><br> and <br><br> ALLEGHENY WOOD PRODUCTS INTERNATIONAL, INC. <br> 240 Airport Road <br> Petersburg, WV 26847 <br><br> and <br><br> ALLEGHENY WOOD TIMBER PRODUCTS, LLC <br> 240 Airport Road <br> Petersburg, WV 26847 <br><br> Defendants. | Case No.: 2:24-cv-00003-TSK <br><br> Judge: Honorable Tom Kleeh |

## DECLARATION OF M. TROY LEMASTERS

M. Troy Lemasters, being of full age, hereby declares upon penalty of perjury, pursuant to West Virginia Code § 39-1-10a and 28 U.S.C. § 1746, that the following is true and correct:

1. I am the Special Asset Manager and Senior Vice President for United Bank.

2. My business office address is 501 Avery Street, 7th Floor, Parkersburg, West Virginia 26101.

3. Due to my position with United Bank, I have firsthand knowledge of the the following loan documents between United and Defendants (as more particularly described below herein) and the events giving rise to Allegheny Wood Products, Inc. ("AWP"), Allegheny Wood Products International, Inc. ("AWPI"), and Allegheny Wood Timber Products, LLC, ("AWTP") (collectively the "Defendants"), ceasing their operations and terminating most of their workforce (as more particularly described below herein).

4. I submit this declaration in support of United Bank's Emergency Motion for Appointment of a Receiver.

5. By Loan Agreement dated September 28, 2005, as amended and modified from time to time (the "Credit Line Loan Agreement"), United made a loan to AWP (the "Credit Line Loan"), and to evidence the Credit Line Loan, AWP executed a Promissory Note dated September 28, 2005, as amended and modified from time to time, payable to United in the original amount of Forty Million Dollars ($40,000,000.00), which amount has increased and decreased from time to time (the "Credit Line Note").

6. By Loan Agreement dated March 11, 2022, as modified and amended from time to time (the "Term Loan Agreement"), $15,000,000.00 of the Credit Line Loan was designated as a term loan (the "Term Loan"), and $25,475,000.00 of the Credit Line Loan continued as a line of credit under the Credit Line Loan Agreement, so that the principal balance of the Term Loan and the Line of Credit Loan totaled $40,475,000.00. To evidence the Term Loan, AWP executed a Promissory Note, dated March 11, 2022, payable to United in the original amount of Fifteen Million Dollars ($15,000,000.00) (the "Term Note," and collectively with the Credit Line Note, the "Notes").

7. To secure repayment of the Notes, one or more Defendants executed and delivered deeds of trust granting liens and security interests on certain real property (the "Real Property Collateral") and personal property, which are more particularly described in Schedule 1 attached to the Verified Complaint and incorporated herein by reference (the "Deeds of Trust").

8. To secure repayment of the Notes, one or more Defendants executed and delivered security agreements granting liens and security interests in certain personal property which are more particularly described in Schedule 2 to the Verified Complaint and incorporated herein by reference (the "Security Agreements"), including, but not limited to, accounts receivable, equipment, and inventory (which includes all lumber and log inventory).

9. By Amendment to Loan Agreements, effective July 31, 2023, United and Defendants agreed to extend the maturity date of the Notes to September 30, 2023 (the "July 31, 2023 Amendment").

10. United and Defendants entered into a Second Amendment to Loan Agreements and an Acknowledgement and Release effective September 30, 2023, executed on December 29, 2023, wherein United and Defendants agreed to extend the maturity date of the Notes to January 31, 2024 (collectively, the "<u>September 30, 2023 Amendment</u>").

11. For a period of several months beginning in mid to late 2023, the Defendants engaged in marketing and sales process in an attempt to sell their businesses as a going concern.

12. The July 31, 2023 Amendment and the September 30, 2023 Amendment were further short term extensions granted by United to the Defendants and were made in order to give the Defendants time to undergo the marketing and sales process.

13. The Notes matured on January 31, 2024, and United demanded payment of the Notes in full.

14. On February 20, 2024, United was notified by Defendants that the final potential going concern buyer had confirmed that it was no longer interested in purchasing Defendants' business operations.

15. The final potential going concern buyer had made an offer to acquire the Defendants' entire business operation as a going concern. While the purchase price is confidential, the amount of the offer, which was rescinded before further negotiations could take place, would not have satisfied United's debt in full.

16. During the 4-month period ending January 31, 2024, Defendants' accounts receivable, lumber inventory, and log inventory declined by $5.6 million, while Defendants incurred operating losses of approximately $6.0 million.

17. As of February 20, 2024, despite a several months' long sales process conducted by an investment banker, Defendants had no prospects for a sale of their business enterprise as a going concern.

18. On February 21, 2024, United exercised its rights under the Loan Agreements and placed an administrative freeze on all of the Defendants' deposit accounts that were held at United.

19. On February 22, 2024, the Defendants ceased operations and terminated most of their employees.

20. The parties entered into a Forbearance Agreement effective February 23, 2024 (the "Forbearance Agreement"), in an attempt to reach a consensual agreement to allow the Defendants to pay certain necessary expenses required in the winding down of their business operations until a receiver could be put in place to take over control of the wind down process.

21. The liens and security interests in the personal property of Defendants were perfected by the filing of UCC-1 financing statements naming United as Secured Party, as set forth in Schedule 3 attached hereto and incorporated herein by reference (the "UCCs"), and constitute first priority security interests[1] on the Collateral, as that term is defined below. True and exact copies of the UCCs are set forth as Exhibit I to the Appendix filed contemporaneously with this Verified Complaint. The UCCs, together with the Notes, the Deeds of Trust, the Security Agreements, the Pledge Agreement, the July 31, 2023 Amendment, the September 30, 2023 Amendment, and the Forbearance Agreement are referred to herein

---

[1] United acknowledges that certain creditors might have first priority purchase money interests in certain items of the Collateral, but, other than those purchase money liens, United has a first priority lien on the Collateral.

collectively as the "Loan Documents." The Real Property Collateral and personal property subject to the liens and security interests granted pursuant to the aforesaid Deeds of Trust and Security Agreements are hereinafter collectively referred to as the "Collateral."

22. The Collateral is located in multiple counties throughout West Virginia, as well as in Clarion County, Pennsylvania and Garrett County, Maryland. The locations of the Collateral are set forth in Schedule 1 to the Verified Complaint.

23. United has some appraisals of the Real Property Collateral, but those appraisals are for the highest and best use of the Real Property Collateral, and not for shuttered, vacant sawmills.

24. United does not have any appraisals of the personal property.

25. After the Defendants ceased operations on February 22, 2024, their inventory and equipment is sitting idle, and United and the Defendants are concerned about the security and maintenance of the Collateral.

26. The Defendants' assets are mainly located at sawmills or on timberlands which are in rural or remote areas of West Virginia, Pennsylvania, and Maryland.

27. To date, United is unaware if security personnel has been hired to protect Defendants' sawmill operations.

28. As of February 26, 2024, the outstanding amount of principal, interest and late fees owed to United pursuant to these loan agreements exceeds $40,496,530.00.

Executed on the 5th day of March, 2024

_____
M. Troy Lemasters
Special Asset Manager and Senior Vice President
United Bank