# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED BANK ) <br> 11185 Fairfax Boulevard ) <br> Fairfax, VA 22023 ) <br> ) <br> ) <br>          Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> ALLEGHENY WOOD PRODUCTS, INC. ) <br> 240 Airport Road ) <br> Petersburg, WV 26847 ) <br> ) <br> and ) <br> ) <br> ALLEGHENY WOOD PRODUCTS ) <br> INTERNATIONAL, INC. ) <br> 240 Airport Road ) <br> Petersburg, WV 26847 ) <br> ) <br> and ) <br> ) <br> ALLEGHENY WOOD TIMBER ) <br> PRODUCTS, LLC ) <br> 240 Airport Road ) <br> Petersburg, WV 26847 ) <br> ) <br> and ) <br> ) <br> John W. Crites, II ) <br> 471 Point Drive ) <br> Petersburg, WV 26847 ) <br> ) <br>          Defendants. ) | Case No. <br><br> Judge <br><br><br> **AMENDED COMPLAINT FOR BREACH OF CONTRACT AND EMERGENCY APPOINTMENT OF A RECEIVER** |

1

## AMENDED COMPLAINT

For its complaint against defendants, ALLEGHENY WOOD PRODUCTS, INC., a West Virginia corporation ("AWP"), ALLEGHENY WOOD PRODUCTS INTERNATIONAL, INC., a West Virginia corporation ("AWPI"), ALLEGHENY WOOD TIMBER PRODUCTS, LLC, a West Virginia limited liability company ("AWTP") (AWP, AWPI, and AWTP are hereinafter collectively referred to as the "Corporate Defendants"), and JOHN W. CRITES, II, an individual, defendant ("Crites") (collectively with Corporate Defendants, the "Defendants"), UNITED BANK, a Virginia banking institution, successor by merger to United Bank, Inc. ("United"), alleges and avers as follows:

## PARTIES, JURISDICTION, AND VENUE

1. United is a Virginia banking institution, successor by merger to United Bank, Inc., with its principal place of business located at 11185 Fairfax Boulevard, Fairfax, Virginia 22023.

2. AWP is a West Virginia corporation with its principal place of business at 214 Airport Road, Petersburg, West Virginia 26847.

3. AWPI is a West Virginia corporation with its principal place of business at 214 Airport Road, Peterburg, West Virginia 26847.

4. AWTP is a West Virginia limited liability company with its principal place of business at 214 Airport Road, Petersburg, West Virginia 26847.

5. Crites is a resident of West Virginia residing at 471 Point Drive, Petersburg, WV 26847.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity between United and the Defendants and the amount in controversy exceeds $75,000.00.

4865-7348-4458.v2

7.  The Court has the authority to appoint a receiver pursuant to 28 U.S.C. § 754 and West Virginia Code § 53-6-1.

8.  Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## THE LOAN DOCUMENTS

9.  By Loan Agreement dated September 28, 2005, as amended and modified from time to time (the "Credit Line Loan Agreement"), United made a loan to AWP (the "Credit Line Loan"), and AWP executed a Promissory Note dated September 28, 2005, as amended and modified from time to time, to United in the original amount of Forty Million Dollars ($40,000,000.00), which amount has increased and decreased from time to time (the "Credit Line Note").

10. By Loan Agreement dated March 11, 2022, as modified and amended from time to time (the "Term Loan Agreement"), $15,000,000.00 of the Credit Line Loan was designated as a term loan (the "Term Loan"), and $25,475,000.00 of the Credit Line Loan continued as a line of credit under the Credit Line Loan Agreement, so that the principal balance of the Term Loan and the Line of Credit Loan totaled $40,475,000.00. To evidence the Term Loan, AWP executed a Promissory Note, dated March 11, 2022, to United in the original amount of Fifteen Million Dollars ($15,000,000.00) (the "Term Note," and collectively with the Credit Line Note, the "Notes"). A true and exact copy of the Notes is set forth in Exhibit A to the Appendix filed contemporaneously with United's initial Verified Complaint.[1]

11. By Guaranty and Suretyship Agreement effective as of December 1, 2019, Crites guaranteed the obligations under the Loan Documents (the "Guaranty"). A true and exact copy of the Guaranty is set forth in Exhibit B to the Appendix.

---

[1] For brevity, United is not refiling the Appendix attached to its initial Verified Complaint. Instead, United incorporates the exhibits to that Appendix by reference.

3

4865-7348-4458.v2

12. By Amendment to Loan Agreements, effective July 31, 2023, as modified and amended from time to time, United and Defendants agreed to extend the maturity date of the Notes to September 30, 2023 (the "July 31, 2023 Amendment"). A true and exact copy of the July 31, 2023 Amendment is set forth in Exhibit C to the Appendix.

13. United and Defendants entered into a Second Amendment to Loan Agreements and an Acknowledgement and Release, both effective September 30, 2023, wherein United and Defendants agreed to extend the maturity date of the Notes to January 31, 2024 (collectively, the "September 30, 2023 Amendment"). A true and exact copy of the September 30, 2023 Amendment is set forth in Exhibit D to the Appendix.

14. To secure repayment of the Notes, one or more Defendants executed and delivered deeds of trust granting liens and security interests on certain real property (the "Real Property Collateral") and personal property as more particularly described in Schedule 1 attached hereto and incorporated herein by reference (the "Deeds of Trust"). True and exact copies of the Deeds of Trust are set forth as Exhibit E to the Appendix.

15. To secure repayment of the Notes, one or more Defendants executed and delivered security agreements granting liens and security interests in certain personal property as more particularly described in Schedule 2 attached hereto and incorporated herein by reference (the "Security Agreements"), including, but not limited to, accounts receivable, equipment, and inventory (which includes all lumber and log inventory). True and exact copies of the Security Agreements are attached as Exhibit F to the Appendix.

16. To secure repayment of the Notes, AWP executed and delivered a Pledge Agreement granting a lien and security interest in AWP's membership interest in AWTP (the

"Pledge Agreement"). A true and exact copy of the Pledge Agreement is set forth in Exhibit G to the Appendix.

17. The parties entered into a Forbearance Agreement effective February 23, 2024 (the "Forbearance Agreement"), wherein Defendants acknowledge that the Loans are in default and consent to the appointment of a receiver, and United agreed to temporarily forbear from exercising its remedies other than the appointment of a receiver. A true and exact copy of the Forbearance Agreement is set forth in Exhibit H to the Appendix.

18. The liens and security interests in the personal property of Defendants were perfected by the filing of UCC-1 financing statements naming United as Secured Party, as set forth in Schedule 3 attached hereto and incorporated herein by reference (the "UCCs"). True and exact copies of the UCCs are set forth as Exhibit I to the Appendix. The UCCs, together with the Notes, the Deeds of Trust, the Security Agreements, the Pledge Agreement, the July 31, 2023 Amendment, the September 30, 2023 Amendment, the Guaranty, and the Forbearance Agreement are referred to herein collectively as the "Loan Documents." The Real Property Collateral and personal property subject to the liens and security interests granted pursuant to the aforesaid Deeds of Trust and Security Agreements are hereinafter collectively referred to as the "Collateral."

19. Pursuant to the terms of the Loan Documents, United has the absolute contractual right to have a receiver appointed, and Defendants have consented to the appointment of a receiver in several different Loan Documents, but most recently in the Forbearance Agreement. Schedule 1 attached hereto references the applicable provisions of the Loan Documents authorizing the appointment of a receiver.

4865-7348-4458.v2

**CURRENT STATUS**

20. In the July 31, 2023 Amendment, the September 30, 2023 Amendment, and the Forbearance Agreement, Defendants acknowledged that they were in default under the Loan Documents. Defendants further acknowledged the amounts due under the Loan Documents.

21. Moreover, since the inception of the Credit Line Loan Agreement, the maturity date of the Credit Line note has been extended numerous times.

22. Beginning in mid to late 2023, the Corporate Defendants engaged in a months long marketing and sales process in an attempt to sell their businesses as a going concern.

23. The July 31, 2023 Amendment and the September 30, 2023 Amendment were further short term extensions granted by United to the Defendants and were made in order to give the Defendants time to undergo the marketing and sales process.

24. The Notes matured on January 31, 2024, and United demanded payment of the Notes in full.

25. On February 20, 2024, United was notified by Defendants that the final potential going concern buyer had confirmed that it was no longer interested in purchasing Corporate Defendants' business operations.

26. The final potential going concern buyer had made an offer to acquire the Corporate Defendants' entire business operation as a going concern. While the purchase price is confidential, the amount of the offer, which was rescinded before further negotiations could take place, did not satisfy United's debt in full.

27. During the 4-month period ending January 31, 2024, Corporate Defendants' accounts receivable, lumber inventory, and log inventory declined by approximately $5.6 million, while Corporate Defendants incurred operating losses of approximately $6.0 million.

28. As of February 20, 2024, Corporate Defendants had no prospects for a sale of their business enterprise as a going concern after a six-month sales process by an investment banker.

29. On February 21, 2024, United exercised its rights under the Loan Documents and placed an administrative freeze on all of the Corporate Defendants' deposit accounts that were held at United.

30. On February 22, 2024, the Corporate Defendants ceased operations and terminated most of their employees.

31. The parties entered into the Forbearance Agreement in an attempt to reach a consensual agreement to allow the Corporate Defendants to pay certain necessary expenses required in the winding down of its business operations until a receiver could be put in place to take over control of the wind down process.

32. The Collateral is located in multiple counties throughout West Virginia, as well as in Clarion County, Pennsylvania and Garrett County, Maryland. The locations of the Collateral are set forth in Schedule 1 to this Verified Complaint.

33. United has some appraisals of the Real Property Collateral, but those appraisals are for the highest and best use of the Real Property Collateral, and not for shuttered, vacant sawmills.

34. United does not have any appraisals of the personal property.

35. After the Corporate Defendants ceased operations on February 22, 2024, upon information and belief, their inventory and equipment are sitting idle, and United has been unable to ascertain whether Corporate Defendants' property is being adequately secured and protected from any potential damage, destruction, and theft.

36. The Corporate Defendants' assets are mainly located at sawmills or on timberlands which are in rural or remote areas of West Virginia, Pennsylvania, and Maryland.

4865-7348-4458.v2

37. To date, United is unaware if security personnel has been hired to protect Corporate Defendants' sawmill operations.

## COUNT I - BREACH OF LOAN DOCUMENTS

38. United incorporates by reference herein all of the foregoing allegations.

39. The Notes matured on January 31, 2024, and, as of February 26, 2024, the amount of principal, interest and late fees only due and owing are $26,514,664.70 on the Credit Line Note and $13,981,872.14 on the Term Note. Corporate Defendants have not paid the full outstanding balance of the Notes as of the maturity date as required by the Loan Documents.

40. Corporate Defendants' failure to pay the balances due upon maturity of the Notes constitutes a default under the Loan Documents.

41. United is entitled to a judgment against Corporate Defendants for all amounts due and payable under the Notes, including, but not limited to, the amounts of the balances set forth hereinabove; all interest and late charges accrued and unpaid after February 26, 2024; all attorney's fees and costs of collection; and any and all other expenses and costs associated with Corporate Defendants' breach of the Loan Documents.

## COUNT II – BREACH OF GUARANTY

42. United incorporates by reference herein all of the foregoing allegations.

43. The Guaranty is a valid and binding contractual guaranty by which Crites unconditionally guaranteed payment and performance by Corporate Defendants under the Loan Documents.

44. Crites has breached his obligations under the Guaranty by failing to pay the outstanding balance due under the Notes.

4865-7348-4458.v2

45. United is entitled to judgment against Crites for all amounts due and payable under the Notes.

## COUNT III - UNITED'S UNQUALIFIED RIGHT
## TO APPOINTMENT OF A RECEIVER

46. United incorporates by reference herein all of the foregoing allegations.

47. Upon the occurrence of an event of default under the Loan Documents, United possesses an unqualified right to the appointment of a receiver. Reference is hereby made to Schedule 1 of this Verified Complaint.

48. The appointment of a receiver is not an extraordinary remedy, and United has an absolute right to such relief under the Loan Documents *U.S. Bank Nat. Ass'n v. Sayona Hosp., LLC*, No. 3:14-CV-62-GMG, 2014 WL 2018549 at *3 (N.D. W. Va. June 25, 2014), *report and recommendation adopted*, No. 3:14-CV-62, 2014 WL 2918547 (N.D. W. Va. June 26, 2014). Because an event of default has occurred under the Loan Documents, United is entitled to a receiver as a matter of law.

49. In addition to United's contractual right to the appointment of a receiver, United has a right in equity to appointment of a receiver to ensure that United's interests are protected. *See, e.g.*, *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 61 S. Ct. 229 (1940); *see also First United Bank & Trust v. Square at Falling Run, LLC,* No. CIV.A. 1:11CV31, 2011 WL 1563108 at *8 (N.D. W. Va. March 31, 2011). For these reasons, United seeks the appointment of a receiver to (a) assume full operation, management, and control of Corporate Defendants' assets and operations; and (b) oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of Corporate Defendants and their operations.

50. A receiver will perform duties necessary to manage, maintain, and protect Corporate Defendants' assets. In particular, a receiver may be empowered to utilize the proceeds

9

from the Collateral and other assets to satisfy related expenses including the secured debt owed by Defendants to United, insurance, taxes, and general costs. Additionally, to the extent funds are insufficient to satisfy essential costs, a receiver may be able to secure funding from sources unavailable to the Corporate Defendants. A receiver may also be able to sell portions of the Corporate Defendants' operations to interested third parties, which in turn may be the only way to provide an opportunity for some of the Corporate Defendants' workforce to return to employment.

51. Here, the appointment of a receiver is appropriate for several reasons. First, a receiver is necessary to maintain and protect the Collateral and the other assets of the Corporate Defendants. The accounts receivable and log and lumber inventory are particularly vulnerable to loss or rapid diminution in value. Moreover, the Corporate Defendants' assets are not located in one easily secured location but are scattered across multiple locations in three different states. Second, a receiver will offer substantial assistance in preparing the Collateral and other assets for sale and in maximizing the sales proceeds for the benefit of United and all other constituents. Third, a receiver is necessary to offer stability and assurances for the orderly wind down and liquidation of the Corporate Defendants' business.

52. Furthermore, the appointment of a receiver is appropriate because Corporate Defendants are unable to maintain and secure the Collateral and their other assets adequately. In so doing, Corporate Defendants risk substantial loss to the Collateral, injury to any persons which may have been involved in such loss, and injury to the value of the United's liens and security interests therein, all without recourse because the Corporate Defendants are insolvent.

53. Immediate appointment of a receiver is warranted at law and in equity, pursuant to both Federal Rule of Civil Procedure 66 and relevant case law, as well as pursuant to United's rights under the Deeds of Trust and other Loan Documents. The immediate appointment of a

receiver protects the value of the Collateral and other assets of Corporate Defendants, and it ensures that any funds received through Corporate Defendants' business operations are applied appropriately.

54. For the Court's consideration, United has identified Chris Deweese, a CPA employed by Suttle & Stalnaker, as an appropriate candidate to serve as the receiver. Information on Mr. Deweese, including his capabilities as a receiver, is attached hereto as Exhibit J to the Appendix.[2]

55. Defendants expressly consent to the appointment of a receiver to assume full operation, management, and control of Corporate Defendants' assets and operations, and to oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of the Corporate Defendants. The Defendants' consent is set forth in accordance with the Consent Order Appointing a Receiver, filed simultaneously herewith, which is submitted to the Court as a proposed consent order.

WHEREFORE, United requests this Court grant the following relief:

(a) A money judgment against Defendants in the amount equal to the principal and interest due and owing under the Loan Documents as of the date judgment is entered, plus pre-judgment and post-judgment interest thereon at the contractual or statutory rates until paid, reasonable attorneys' fees, and all other monetary relief to which it may be entitled under the Loan Documents;

(b) The immediate appointment of a receiver with the authority to:

    a. Take control of the properties, assets, and operations of the Corporate Defendants;

---

[2] After United filed its initial Verified Complaint, this Court entered an Order appointing Mr. Deweese as Receiver.

      b. Operate, manage, control and sell the Corporate Defendants' properties, assets and operations; and

      c. Oversee, manage, and direct the acts, conduct, operations, assets, liabilities, and financial condition of the Corporate Defendants.

(c) Such other and further relief as this Court may deem appropriate.

UNITED BANK

By Counsel

**/s/ Seth P. Hayes**
Seth P. Hayes, Esq. (WVSB #10381)
Jackson Kelly PLLC
3000 Swiss Pine Way, Suite 200
Morgantown, West Virginia 26501
Telephone: 304-284-4100
shayes@jacksonkelly.com

and

Ellen S. Cappellanti, Esq.
Jackson Kelly PLLC
500 Lee Street, Suite 1600
Charleston, West Virginia 25301-3203
Telephone: 304-340-1100
ecappellanti@jacksonkelly.com

and

Michael Beal, Esq. (USDC # 1253)
*Admitted Pro Hac Vice*
SC Bar No. 0598
BEAL, LLC
1301 Gervais Street, Ste. 1040
Columbia, SC 29201
mbeal@bealLLC.com